Opinion issued May 12, 2026



In The

# Court of Appeals

For The

# First District of Texas

_____

NO. 01-24-00960-CR

NO. 01-24-00972-CR

_____

**JONATHAN RENE CEDILLO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1813134, 1813135**

**MEMORANDUM OPINION**

A jury found Jonathan Rene Cedillo guilty of continuous sexual abuse of a child in two cause numbers.[1]  The trial court sentenced Cedillo to 35 years in prison in each case, with the sentences to run concurrently.

On appeal, Cedillo argues that the trial court abused its discretion in permitting outcry and expert testimony, and he contends that the trial court erred when it denied his request for a limiting instruction.  We affirm.

## Background

Cedillo is Erin and Lisa's father.[2]  At the time of trial, Lisa was 14 and Erin was 13.  Erin and Lisa each testified that Cedillo first sexually assaulted them when they were around 9 years old.  Cedillo sexually abused Lisa on multiple occasions, including by touching her breasts and by putting his tongue, penis, and hand inside her vagina.  Lisa also testified that Cedillo forced her to "put [her] mouth on his penis." The last instance of abuse occurred when she was 10 years old.  Cedillo also sexually assaulted Erin multiple times.  On one occasion, Cedillo grabbed Erin's breasts and vaginal area, and on another, he tried to make her touch his penis.

---

[1]     TEX. PENAL CODE § 21.02.

[2]     As is our common practice, we refer to the complainants and their family members by their initials or pseudonyms for their privacy. *See, e.g.*, TEX. R. APP. P. 9.10(a)(3); *Ingerson v. State*, 559 S.W.3d 501, 503 n.3 (Tex. Crim. App. 2018); *Jenkins v. State*, No. 01-18-00987-CR, 2020 WL 1679697, at *1 n.3 (Tex. App.— Houston [1st Dist.] Apr. 7, 2020, pet. ref'd) (mem. op., not designated for publication).

**Admission of Outcry Testimony**

In his first issue, Cedillo argues that the trial court abused its discretion in allowing outcry testimony from Mother, the children's grandmother, and Nicole Bhuyan (Erin's school counselor) because the testimony was unreliable. The State counters that this argument is not preserved and, even if it was preserved, the trial court did not err and the evidence was not harmful. We agree with the State.

## A.     Standard of Review and Applicable Law

The Texas Code of Criminal Procedure allows admission of certain hearsay testimony in the prosecution of sexual offenses against minors. TEX. CODE CRIM. PROC. art. 38.072. The statute allows the designation of an outcry witness to testify about a child's disclosure of abuse but requires that the outcry witness be the "first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense." *Id.* § 2(a)(3); *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990).

Before a designated outcry witness may testify about the child's disclosure, the trial court must find, "in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2). "The phrase 'time, content, and circumstances' refers to 'the time the child's statement was made to the outcry witness, the content of the child's statement, and the circumstances

3

surrounding the making of that statement.'" *Broderick v. State*, 89 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (quoting *MacGilfrey v. State*, 52 S.W.3d 918, 921 (Tex. App.—Beaumont 2001, no pet.)).

In such a hearing, the trial court's focus is whether the child's outcry statement is reliable, not whether the outcry witness is credible. *Sanchez v. State*, 354 S.W.3d 476, 487–88 (Tex. Crim. App. 2011); *see* TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2). The trial court considers the circumstances of the outcry, not the abuse itself. *Sanchez*, 354 S.W.3d at 487.

A trial court has "broad discretion" in admitting outcry-witness testimony. *Garcia*, 792 S.W.2d at 92. We will not reverse the trial court's decision to admit outcry-witness testimony unless it falls outside the zone of reasonable disagreement. *Id.*

**B.    Outcry Hearing**

Before trial began, the trial court held an Article 38.072 hearing, at which Mother, Grandmother, and Bhuyan testified. *See* TEX. CODE CRIM. PROC. art. 38.072. Specifically, Mother testified that Lisa's best friend, who was around 11 at the time, informed her that Lisa had disclosed sexual abuse. Mother questioned Lisa about the abuse while they were alone in her car. Lisa began crying and told her Cedillo touched her in her "vaginal area." Lisa said she had not disclosed this information before because she did not want her father to get in trouble.

4

When Mother returned home, she also talked to Erin. Erin told her that Cedillo had touched her private area—her vagina—as well. Mother reported the incident to the police and CPS.

Grandmother testified she was driving home from picking Erin up from school when Mother called her and told her about Lisa's disclosed abuse. Grandmother asked Erin if anything had happened to her. Erin "busted out crying" and said that Cedillo had touched her. Grandmother did not ask her for any more details.

Bhuyan, a school counselor, testified that Erin disclosed that she had been sexually abused. Bhuyan testified that Erin cried and told her Cedillo had touched her since she was nine years old. Erin said that Cedillo raped her. When Bhuyan asked Erin if by rape she meant that Cedillo's penis went inside her vagina, Erin said "yes; it hurt." Bhuyan made a CPS report and informed Mother. Bhuyan also gave a recorded statement to a detective.

## C.    Analysis

After reviewing Cedillo's objections at trial, we agree with the State that Cedillo did not object at the outcry hearing on the basis that Lisa and Erin's statements to Mother, Grandmother, or Bhuyan were unreliable.

Rather, the purpose of outcry hearing was to determine who was the appropriate outcry witness. The State argued the forensic interviewer was the appropriate outcry witness because she "ascertain[ed] all the details regarding what

5

actually happened." The State explained that it brought Mother, Grandmother, and Bhuyan to the hearing "to establish that [the forensic interviewer] is the person who knows all the details about how the girls were exactly touched and the different ways that they were touched." Cedillo argued that Mother was the first adult to speak to the children and therefore she was the proper outcry witness, not the forensic interviewer as the State contended. And although Cedillo "question[ed] the reliability of [Lauren's and Erin's] statement[s]" to Mother, he did so only on the basis that Lauren and Erin were not testifying at the outcry hearing.[3] Cedillo did not make the arguments he makes now—i.e., that the children's statements to Mother, Grandmother, and Bhuyan are not reliable based on the time, circumstances, and content of the statements.[4]

---

[3]     Specifically, Cedillo objected:

> In addition, defense would argue that incorporated by reference prior argument [sic], but without [Lisa] or [Erin] testifying either in this outcry hearing, it further questions the reliability of that outcry statement. And so in addition to, you know, the case law doesn't say the first person who remembers. It's the first adult. And although the -- the mother says, "Oh, well, I just remember the touching parts," that doesn't mean for 20 to 30 minutes something else was said. But, in addition to that, without [Erin] and [Lisa] testifying, defense would argue that the statement is unreliable, so there shouldn't be an outcry, but if there is one, it's Victoria.

[4]     We note that Cedillo argues that the trial court "did not evaluate the circumstances under which the statements were made in accordance with the criteria set out in *Buckley* [*v. State*, 758 S.W.2d 339, 343–44 (Tex. App.—Texarkana 1988), *aff'd*, 786 S.W.2d 357 (Tex. Crim. App. 1990)]. Cedillo is correct—but because Cedillo never requested that the trial court do so.

6

To preserve an appellate complaint about the reliability of an outcry statement, the defendant must object on this basis in the trial court. *See Lopez v. State*, No. 01-23-00948-CR, 2025 WL 1256452, at \*13 (Tex. App.—Houston [1st Dist.] May 1, 2025, pet. ref'd) (mem. op., not designated for publication); TEX. R. APP. P. 33.1(a). Because Cedillo did not do so here, we conclude that he did not preserve his complaint for appellate review. *See Duran v. State*, 163 S.W.3d 253, 256 (Tex. App.—Fort Worth 2005, no pet.) (concluding that defendant failed to preserve appellate complaint that outcry statement was unreliable when he did not object on this basis in trial court).

But even assuming Cedillo preserved this complaint, and assuming without deciding that the trial court abused its discretion in admitting Mother's, Grandmother's, and Bhuyan's outcry testimony, any such error was harmless.

The admission of inadmissible hearsay constitutes nonconstitutional error, and it will be considered harmless if, after examining the record as a whole, we are reasonably assured that the error did not influence the jury verdict or had but a slight effect. *See* TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Likewise, improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991). And both this Court and our sister court in Houston have held that any error in admitting hearsay under

7

article 38.072 is harmless if the same or similar evidence is admitted without objection at another point in the trial. *See Lamerand v. State*, 540 S.W.3d 252, 259–60 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (any error in admitting outcry testimony was harmless because complainant gave similar testimony); *Nino v. State*, 223 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (improperly admitted outcry testimony was harmless because complainant gave "substantially the same account of the offense" in her testimony).[5]

Here, both Lisa and Erin testified in detail—without objection—to Cedillo's abuse. Lisa testified that beginning when she was around 9, at various times, Cedillo touched her breasts while they were watching television, put his tongue inside her vagina, "caressed" her butt, and put his penis and hand inside her vagina. Lisa also testified that Cedillo would "grab [her] head" and "make [her] put [her] mouth on his penis." Erin also testified that Cedillo would grab her boobs and "middle part," i.e., her vagina, over her clothes.

The State also introduced Exhibits 15 and 16 at trial, which are medical records for Lisa and Erin from the Children's Assessment Center (CAC), without objection from Cedillo. Exhibits 15 and 16 contain evidence similar to Lisa's and

---

[5] *See also Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd) (error in admitting outcry testimony was cured when other similar testimony was given without objection, including from complainant and medical records).

8

Erin's testimony at trial. Exhibit 15 states that Erin "reports that [Cedillo] touched her genitals under her clot[hes] with 'his fingers only' [and] 'sometimes inside and sometimes outside [of] her genitals.'" Erin also "reports he's touched her there more than 5 times, beginning at age 9, ending when she was 10."

Exhibit 16 states that Lisa "reports that [Cedillo] has touched her on her breast (both over and under her clothes) with his fingers. He also touched her on her middle part (both over and under her clothes) with his hands and his private part (genitals) both over and insider her genitals." Lisa also reports "he touched her on her butt both over and under her clothes with his hands" and that Cedillo touched her more than five times.

Accordingly, after examining the record, we hold that any improper admission of Mother's, Grandmother's, and Bhuyan's testimony did not influence the jury verdict, or had but a slight effect, because the same or similar evidence was admitted without objection elsewhere at trial. *See Lamerand*, 540 S.W.3d at 259–60; *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd).

We overrule Cedillo's first issue.

## Expert Testimony

In his second issue, Cedillo argues that the trial court abused its discretion in admitting the expert testimony of Dr. Whitney Crowson. Cedillo objected to Dr. Crowson's testimony based on Texas Rules of Evidence 702, 703, and 705, arguing

9

that her opinions were formed using "unreliable methodology" and, therefore, could not assist the trier of fact. Cedillo also objected based on Texas Rules of Evidence 401, 402, and 403, arguing that Dr. Crowson's testimony was irrelevant and more prejudicial than probative.

## A. Dr. Crowson's Testimony

Dr. Crowson testified that she is a clinical psychologist at the CAC, where she has worked for over 10 years. As a staff psychologist at the CAC, Dr. Crowson provides mental health services to children and their families when there have been allegations of sexual abuse, psychological testing, crisis risk assessments for those who may be homicidal or suicidal, and training to different agencies and the local community. She has also provided expert testimony in approximately 200 trials.

Dr. Crowson has a Bachelor of Science degree in psychology, a master's degree in counseling and guidance, and a master's degree and doctorate in clinical psychology. She is licensed to practice psychology in Texas and is certified in trauma-focused cognitive behavioral therapy, forensic interviewing of children, and extended forensic evaluation.

In testifying as an expert, Dr. Crowson testified that she relies on the principles she uses in her practice and the same standards and ethical principles that she always adheres to. She further testified that she is qualified to testify to the

dynamics of child sexual abuse based on her education and previous training, as well as her ongoing training and work with this population for over 10 years.

Dr. Crowson explained that she had not met with Lisa or Erin and that her role in testifying was to "explain or clarify any dynamics or processes of sexual abuse and trauma, so that, you, the jury, have the information you need when deliberating your decision."

Dr. Crowson testified that every child abuse case is different, but that children are more likely to be abused by people they know, such as a father, rather than strangers because people they know have access, opportunity, and trust. She testified that if the abuse was committed by a father, oftentimes the child will try to protect the father rather than shun them, which can cause a delayed disclosure. "[T]hey don't hate their dad. They just don't like what's happening."

Dr. Crowson explained that a delayed outcry is an "outcry of abuse that occurs long after the abuse began." Typically, if the child wants the abuse to be known, they will usually tell a trusted adult in their life that they know will protect them and intervene on their behalf. "But if they don't want it to go that far, they will tell a similarly-aged peer, a sibling, cousin, someone like that where they can still control the narrative."

Dr. Crowson explained that children know that once they tell an adult something serious, it is then out of their hands. If they think the adult will do

11

something about it, that might "unravel their lives essentially, or they might not know what to expect, and that's scary to them." She explained that telling a friend is a way to get it out "without their life or the narrative being taken away from them."

Dr. Crowson testified to five stages of disclosure: predisclosure, partial disclosure, full or active disclosure, recantation, and redisclosure. She explained that not all children will go through all of them, that they are not necessarily linear, and that it is possible for a child to be in one disclosure stage with one person and in a different disclosure stage with another person. She also testified that an involuntary disclosure is a disclosure that happens before a child is ready to disclose when the abuse is discovered versus them disclosing it to someone. Many times this results in the child providing minimal details about the abuse, if any at all.

Dr. Crowson testified that even when a child decides to fully disclose, the child may not give all the details every single time because this is traumatic and overwhelming. And particularly with ongoing abuse, she does not expect all the details every time the child is asked about the abuse. She also explained that children remember dates and time frames "very poorly" as those types of details are irrelevant to a child.

Dr. Crowson then described the four "symptoms" of sexual abuse, or behaviors in four different areas of functioning. First, she testified that she looks for intrusion—the child experiencing intrusive or unwanted thoughts, which cause

12

physiological or psychological distress such as flashbacks, nightmares, or in young children, repetitive play. Second, Dr. Crowson testified that she looks for avoidance of the memories or thoughts of the abuse. Because these thoughts and memories cause physiological or psychological distress, the child will try to avoid thinking about or talking about it.

Third, Dr. Crowson testified that she looks for negative alterations in the child's thoughts and mood. Signs of this include forgetting details of the abuse, a depressed effect or a loss of interest in people or things they used to be interested in, suicidal ideation, withdrawal, or losing trust in one's self or the world around them. Finally, Dr. Crowson testified that she looks for disruptions and arousal. Things to look for include irritability, emotional dysregulation, sleep disturbances, or exaggerated startle responses. She testified that she does not expect to see all of these symptoms in each area, rather only one or two in each area for each person.

Dr. Crowson also testified about coaching. She explained that coaching is when someone influences or coerces a child to make false allegations. She testified that coaching usually "stands out pretty glaringly." Dr. Crowson testified that if a child tells "all the details start to finish, in a beautiful, organized manner, that is extremely unusual." She further testified that when a child is coached it will sound rehearsed and the child will have all the answers to the questions.

Finally, Dr. Crowson testified about the behavior exhibited by children testifying about sexual abuse during court. She explained that there is no expectation of typical behavior because "[w]e're all human, so we all may respond differently." But some children may shut down or say they do not remember certain things because they want to disengage from what is happening. Others disassociate, like they are somewhere else, or become defensive. And then others are able to get through it. But all of this behavior is an attempt to protect themselves or to escape the situation. She further testified that it could be particularly difficult for a child to testify against the assailant if it is someone they love because they may miss that person or feel protective over that person. "[T]o face this person again and speak negatively about this person could be more heartbreaking for them, and they may be struggling more with grief more than . . . anything and wanting to protect the person."

## B.  Standard of Review and Applicable Law

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter of the

14

testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will assist the factfinder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006). These conditions are commonly referred to as qualification, reliability, and relevance. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

An appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion. *Id.* The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Id.*

Here, Cedillo does not challenge Dr. Crowson's qualifications—but argues that her testimony was based on an unreliable methodology and was irrelevant and more prejudicial than probative. We address each in turn below.

## C. Reliability

The test for reliability of an expert's opinion differs depending on whether the testimony is based on hard science or soft science. Hard sciences are "areas in which precise measurement, calculation, and prediction are generally possible," and "include mathematics, physical science, earth science, and life science." *Weatherred v. State*, 15 S.W.3d 540, 542 n.5 (Tex. Crim. App. 2000). On the other hand, soft sciences "are generally thought to include such fields as psychology, economics, political science, anthropology, and sociology." *Id.* (citation omitted).

The test for reliability of soft-science expert testimony asks whether: (1) the field of expertise is a legitimate one; (2) the subject matter of the expert's testimony is within the scope of that field; and (3) the expert's testimony properly relies upon or utilizes the principles involved in the field. *Rhomer*, 569 S.W.3d at 671 (citing *Nenno v. State*, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999)). "Reliability centers on the principles and methodology, and not on conclusions an expert generates by using those principles or methodology." *State v. Dominguez*, 425 S.W.3d 411, 422 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citations omitted).

First, the subject of child sexual abuse is a legitimate subject within the field of psychology. *See, e.g.*, *Cohn v. State*, 849 S.W.2d 817, 818–19 (Tex. Crim. App. 1993); *Hernandez v. State*, 53 S.W.3d 742, 751 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

Second, the subject matter of Dr. Crowson's testimony, the common behavioral traits exhibited by child victims of sexual abuse, was within the scope of that field. *See Cohn*, 849 S.W.2d at 819; *Mulvihill v. State*, 177 S.W.3d 409, 414 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Third, Dr. Crowson's testimony properly relied upon and utilized the principles involved in the field. Dr. Crowson testified that her opinions were based

on her advanced education, training, and experience as a clinical psychologist. Her education included a Bachelor of Science degree in psychology, a master's degree in counseling and guidance, and a master's degree and doctorate in clinical psychology. She also holds certifications in trauma-focused cognitive behavioral therapy, forensic interviewing of children, and extended forensic evaluation. Finally, she has worked at the CAC for over 10 years, where she provides mental health services, including individual, group, and family therapy, to children who have been victims of sexual abuse, as well as their families. Dr. Crowson testified that, in providing her opinions, she relies on the standards and ethical principles she uses in her practice.

We conclude that this evidence of Dr. Crowson's education, training, and experience detailed above provided a sufficient basis for the trial court to find the methodology behind her testimony regarding the dynamics of child sexual abuse disclosure and trauma was reliable. *See, e.g.*, *Mulvihill*, 177 S.W.3d at 414. Accordingly, we conclude that the trial court did not abuse its discretion in finding the subject matter of Dr. Crowson's testimony appropriate for expert testimony. *See Rhomer*, 569 S.W.3d at 671.

**D.     Relevance**

Under Texas Rule of Evidence 401, evidence is considered relevant if it meets two criteria: (a) it has any tendency to make a fact more or less probable than it

17

would be without the evidence, and (b) the fact is of consequence in determining the action. TEX. R. EVID. 401. The Court of Criminal Appeals has explained why testimony like Dr. Crowson's is relevant and admissible:

> Child abuse, especially of the sexual kind, is not a new problem to society. We have learned, much to our dismay, the problem is larger than ever thought, largely because child sexual abuse was in the past a hidden crime—a taboo topic of conversation. But it cannot be said that each of us *understands* all facets of the problem, including why a child who has been abused will act in a certain manner which to the layman may appear unreasonable or inconsistent with a claim of abuse. Brogden's information was both relevant and admissible under the rules of evidence, because it was specialized information of value in assisting the jury to understand the evidence regarding the complainant's conduct.

*Duckett v. State*, 797 S.W.2d 906, 920 (Tex. Crim. App. 1990), *disapproved of on other grounds by Cohn*, 849 S.W.2d at 817.

Here, Dr. Crowson described delayed outcries and why they occur. Lisa testified that she did not disclose the abuse sooner because she was scared and she did not want Cedillo to be taken away. She was afraid that he would be taken away because the abuse "felt wrong" and she knew "it wasn't a good thing." Erin testified that when Mother first asked her about the abuse, she did not want to tell her because she was afraid of not being able to see her family anymore. She also testified that Cedillo told her not to tell anyone or he would have them taken away from Mother. Erin eventually told what happened because what Cedillo did "wasn't right . . . [b]ecause a dad shouldn't do that."

18

Dr. Crowson testified about the different stages of disclosure, as well as involuntary disclosures. Lisa testified that she finally decided to disclose the abuse to her best friend because she was scared and thought her friend would keep a secret. And Lisa testified she felt betrayed when her friend told Mother, but eventually realized this was a good thing. She testified that she did not initially tell Mother all the details about the abuse because she was afraid Cedillo was going to "do something." And Erin outcried only after being directly asked by Mother and Grandmother.

Dr. Crowson also testified about the "symptoms" of sexual abuse. Mother testified that there were behaviors that she did not recognize were signs until after she learned of the abuse. For instance, when the girls would visit Cedillo, Mother testified that Lisa would close herself off from him and never wanted to be near him. She also testified that Erin's behavior did not change as much, but she did gain a lot of weight. And after the abuse was disclosed, both Lisa and Erin began therapy. Lisa was having panic attacks and was placed on medication.

Finally, Dr. Crowson testified about behaviors exhibited by children when testifying about the abuse. Erin testified that she loves Cedillo and misses him, and that testifying was very difficult. She also responded that she did not know or did not remember to a number of questions posed by both the State and the defense and

19

could not testify to a lot of details about the abuse. On the other hand, Lisa was more responsive to questioning. Both girls visibly wept during their testimony.

Based on the above, we conclude that Dr. Crowson's specialized information was of value in assisting the jury to understand the evidence regarding the conduct of Lisa and Erin. *See Duckett*, 797 S.W.2d at 920.

Further, we disagree with Cedillo's assertion that Dr. Crowson's testimony is irrelevant and more prejudicial than probative because she has no specific knowledge of the facts of the case or the witnesses because she did not interview either Lisa or Erin. As the Court of Criminal Appeals has recognized, an expert's testimony is not prohibited "simply because he did not examine the particular person at issue. Examination, or lack thereof, would go to the weight of the testimony, not its admissibility." *Id.* at 920 n.17. The Court further recognized that the better practice would be to *not* "have a non-diagnostic expert personally examine an alleged child abuse victim, lest his testimony become tainted by personal reference to the credibility of the child victim's claims." *Id.* n.18.

The *Duckett* court specifically rejected the notion that the kind of testimony Dr. Crowson gave improperly bolsters the credibility of child complainants. *Id.* at 919–20. And the relevance of such evidence is not dependent upon it serving some kind of rehabilitative function; nor does its corroborating effect unfairly prejudice the defendant for purposes of Rule 403. *See Cohn*, 849 S.W.2d at 819–20. Once Dr.

20

Crowson imparted her specialized knowledge concerning the behavioral characteristics typically exhibited by sexual-abuse victims, the jurors were appropriately left to draw their own conclusions concerning the credibility of the witnesses. *See Yount v. State*, 872 S.W.2d 706, 709–10 (Tex. Crim. App. 1993). The trial court did not abuse its discretion in determining the testimony was relevant to assist the jury. *See Cohn*, 849 S.W.2d at 819–20; *Duckett*, 797 S.W.2d at 916.

Accordingly, we hold that the trial court did not abuse its discretion in admitting Dr. Crowson's expert testimony. We overrule Cedillo's second issue.

### Limiting Instruction

In his third issue, Cedillo argues that the trial court abused its discretion when it denied his request for a limiting instruction in the jury charge pursuant to Texas Code of Criminal Procedure article 38.37, section 2(b). Cedillo contends the State introduced evidence of an extraneous offense—i.e., that Cedillo touched Lisa's breasts—that could not be considered as the predicate offense for continuous sexual abuse of a child. *See* TEX. PENAL CODE §§ 21.02(b), (c)(2); 21.11(a), (c).

Cedillo argues that although this evidence was admissible under article 38.37, section 2(b), he was entitled to a limiting instruction in the jury charge that the jury could not consider such evidence for any purpose unless it believed beyond a reasonable doubt that Cedillo committed that extraneous offense and that it was error

21

for the trial court to refuse such instruction in the charge. *See* TEX. CODE CRIM. PROC. art. 38.37 § 2-a).

Limiting instructions are governed by Rule 105 of the Texas Rules of Evidence. The Rule provides that "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on request, must restrict the evidence to its proper scope and instruct the jury accordingly." TEX. R. EVID. 105(a). In the absence of a proper request, a party may not claim error in the admission of such evidence on appeal. *Id.* 105(b)(1).

The Court of Criminal Appeals has consistently construed Rule 105 as requiring a request for a limiting instruction at the time the evidence is admitted. *See Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007); *Hammock v. State*, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001). "A failure to request a limiting instruction at the time evidence is presented renders the evidence admissible for all purposes and relieves the trial judge of any obligation to include a limiting instruction in the jury charge," even if one is requested. *Williams v. State*, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008).

Here, Cedillo did not request a limiting instruction when the evidence about this extraneous offense was admitted during trial. The trial court therefore did not err in refusing Cedillo's later request to include an article 38.37 instruction in the

charge. *See, e.g.*, *Delgado*, 235 S.W.3d at 251 ("[I]f a defendant does not request a limiting instruction under Rule 105 at the time that evidence is admitted, then the trial judge has no obligation to limit the use of that evidence later in the jury charge."); *Beam v. State*, 447 S.W.3d 401, 406–07 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that because appellant did not request limiting instruction at time extraneous offense evidence was offered and admitted, trial court was not required to give jury any limiting instruction under article 38.37).

We overrule Cedillo's third issue.

## Conclusion

We affirm the trial court's judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).